UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                    :

SAMMIE CURTIS,                             :
                                    :

                       Plaintiff,        :
                                    :                11 Civ. 1186 (JMF)

           -v-                      :
                                    :

P.A. WILLIAMS, et al.,                 :          OPINION AND ORDER
                                    :

                    Defendants.     :
                                    :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/2013

JESSE M. FURMAN, United States District Judge:

       Plaintiff Sammie Curtis, proceeding *pro se*, brings this action, pursuant to Title 42, United States Code, Section 1983, against eleven Defendants, all current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing"), alleging that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.  Defendants Philip Williams, Dr. Kyeetint Maw, Dr. Mikulas Halko, Luis R. Marshall, and Philip Heath have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (Docket No. 39).  For the reasons discussed below, their motion is GRANTED in part and DENIED in part.

---

[1]     Dr. Razia K. Ferdous, B. Furco, and Dr. Mary-Ann Genovese filed their answer on October 1, 2012.  (Docket No. 41).  Dr. John Perilli filed an answer on December 14, 2012.  (Docket No. 60).  Plaintiff has attempted without success to serve Dr. Aman Bakshi and Dr. Johnathan Holder. By Order dated April 19, 2013, the Court directed the Office of the New York State Attorney General to notify the Court by letter within thirty days whether it will accept service on behalf of Holder and Bakshi, or, in the alternative, to provide to the Court addresses where Holder and Bakshi may be served.  (Docket No. 83).

**BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).[2]

Plaintiff Sammie Curtis is a New York State prisoner, currently incarcerated at the Fishkill Correctional Facility in Beacon, New York. At all times relevant to this action, Plaintiff was incarcerated at the Sing Sing Correctional Facility in Ossining, New York. On or about July 2007, Plaintiff injured his left foot while playing basketball. (Compl. ¶ 1). He was subsequently examined by Defendant Williams, who worked as a physician's assistant at Sing Sing. (*Id.* ¶ 2). Plaintiff alleges that "despite signs of a serious physical injury and a serious medical need," Williams failed to thoroughly examine his foot and incorrectly concluded that nothing was wrong with it. (*Id.*). After Plaintiff continued to complain of foot pain, Williams ordered an x-ray of Plaintiff's foot, which showed his foot to be "normal," and a subsequent MRI in December 2007. (*Id.*). In February 2008, Plaintiff learned that his foot injury had been misdiagnosed and Defendant Dr. Holder informed Plaintiff that he would need an iliac bone graft to repair it. (*Id.* ¶¶ 3-5). Dr. Holder performed this surgery on June 21, 2010. (*Id.* ¶ 5).

On or around July 5, 2010, Plaintiff was diagnosed with sarcoma in his pelvic region, which he alleges was caused by the reconstructive surgery. (*Id.* ¶ 7). Dr. Holder prescribed hot compresses to treat the sarcoma and ordered that Plaintiff have weekly follow-up appointments and regular x-ray examinations to monitor his foot. (*Id.* ¶ 8). Dr. Holder also instructed the medical staff at Sing Sing to clean Plaintiff's foot and provide him with moisturizer to prevent "drying and

---

[2]     For ease of reference, all citations to the "Complaint" or "Compl." refer to the Fourth Amended Complaint. (Docket No. 55).

cracking" in his toes.  (*Id.* ¶ 11).  Plaintiff alleges that Nurse Furco and Drs. Ferdous and Genovese did not follow these instructions, and that he subsequently contracted a fungal infection on his toes. (*Id.* ¶ 12).  On August 5, 2010, Plaintiff submitted a sick call request regarding his cast, which had become wet in the shower and "exposed [him] to possible infection," but he was never called for sick call.  (*Id.* ¶ 10).

Around this time, Plaintiff approached Dr. Ferdous to discuss his medical care.  Dr. Ferdous informed Plaintiff that she "lacked the proper knowledge of [plaintiff's] condition and medical needs" to respond to his complaints.  (*Id.* ¶ 14).  Plaintiff also complained to Dr. Genovese, but Dr. Genovese "refused to give Defendant Ferdous a[n] overview of [Plaintiff's] condition . . . which could [have] possibly allowed Defendant Ferdous to properly treat, evaluate, chart and care for plaintiff's condition," and refused Plaintiff's requests to be assigned a different primary care provider.  (*Id.* ¶¶ 15, 17).

On or about September 3, 2010, during an appointment with Dr. Ferdous, Plaintiff asked for new grips for his crutches, as the old ones had worn out.  (*Id.* ¶ 18).  Dr. Ferdous declined the request, stating "why are you telling me this . . . I can not [*sic*] do anything for you.  Tell Dr. Holder when you see him."  (*Id.* ¶ 19).  Plaintiff continued to request new grips for his crutches and was forced to use latex gloves and scrub pads as substitutes until a nurse at Sing Sing provided them. (*Id.* ¶¶ 21-22).  In September 2010, the medical staff at Green Haven Correctional Facility changed Plaintiff's cast.  (*Id.* ¶ 23).  By September 8, 2010, the cast had unraveled twenty-six inches and had two cracks, but Dr. Ferdous and Nurse Furco refused to reschedule Plaintiff's appointment with Dr. Holder for an earlier date to fix the cast.  (*Id.* ¶ 25).  In October 2010, Dr. Holder removed Plaintiff's cast prematurely, causing "excruciating pain and visual evidence of extreme swelling."

(*Id.* ¶ 27).  Although Dr. Holder ordered a post-operative boot for Plaintiff, Dr. Genovese and Nurse

Furco refused to issue it to him.  (*Id.* ¶¶ 28-29).

In November 2010, Plaintiff's foot began to swell and developed a "dark complexion."  (*Id.*

¶¶ 31-32).  Dr. Holder assured Plaintiff that once the swelling subsided, his foot's range of motion

would return.  (*Id.* ¶ 31).  On November 30, 2010, DOCCS physical therapist Delessio suspended

Plaintiff's physical therapy because it was "obvious" that there was "something wrong" with his

foot.  (*Id.* ¶¶ 32-33).  After reviewing Plaintiff's medical records, Delessio ordered Dr. Ferdous to

submit an emergency request for Plaintiff to be seen by Dr. Holder.  (*Id.*

¶ 35).  According to the Complaint, however, Dr. Ferdous saw "nothing abnormal about [plaintiff's]

foot" and told Plaintiff that he would have to wait until Dr. Holder requested to see him and, that in

the meantime, Plaintiff could take prescription pain killers.  (*Id.* ¶ 37).  Somewhat inconsistently,

the Complaint alleges elsewhere that Dr. Ferdous submitted multiple orders for Plaintiff to be seen

by Dr. Holder, which were denied.  (*Id.* ¶ 41).

In January 2011, Dr. Holder informed Plaintiff that he would need another surgical

procedure because, among other things, the screws in his foot were the wrong size and his cast had

been removed prematurely.  (*Id.* ¶ 45).  On February 25, 2011, Plaintiff requested to undergo testing

to check for infection and nerve damage in his foot, but Defendants Ferdous, Furco, Genovese, and

Heath refused the testing.  (*Id.* ¶¶ 49-50).  On March 1, 2011, Dr. Holder performed corrective

surgery on Plaintiff's foot to remove screws that had broken.  (*Id.* ¶ 51).  In May 2011, Plaintiff told

Dr. Holder that he was concerned that he was losing sensation and range of motion in his foot and

that one of his toes was abnormally overlapping with his big toe.  (*Id.* ¶ 59).  Dr. Holder stated that

his ailments would improve with physical therapy.  (*Id.* ¶ 60).  That same month, the screws in

Plaintiff's foot broke a second time.  Dr. Holder told Plaintiff that the brackets were faulty and did

4

not support his weight, but that Dr. Holder was going to file a complaint with the manufacturing company and stop using the company's products. (*Id.* ¶¶ 60-61). In or around June 2011, Plaintiff was informed by an unnamed party that Dr. Holder performed "un-discussed, unwarranted and un-consented procedures on [Plaintiff's] left foot." (*Id.* ¶ 62). On August 16, 2011, Dr. Holder performed a third surgery on Plaintiff's left foot. (Compl. ¶ 63). Although Dr. Holder ordered three days of bed-rest following the procedure, Defendants Furco, Ferdous, and Genovese authorized Plaintiff to attend a court proceeding the morning after the surgery. (*Id.* ¶ 65). Plaintiff claims that during the proceeding, he was still heavily sedated from the surgery, and therefore was unable to present a proper defense, resulting in an unfavorable ruling. (*Id.*).

On January 17, 2012, Dr. Holder ordered Plaintiff to be given a cane. (*Id.* ¶ 69). In the subsequent days, Plaintiff inquired about the status of his cane but was told by Sing Sing staff that they were unaware of Dr. Holder's order, that no canes were available, and that his family would not be permitted to purchase him a cane that met DOCCS security requirements. (*Id.* ¶¶ 70-73). On January 25, 2012, during a Sing Sing function, Plaintiff asked Defendant Heath about his cane, to which Heath responded, "I am fully aware of your issues. Don't worry, Mr. Curtis, you'll get your cane." (*Id.* ¶ 75). In March 2012, Dr. Genovese confiscated one of Plaintiff's crutches in retaliation for his inquiries about the status of his cane. (*Id.* ¶ 78). Dr. Holder also ordered Plaintiff to receive continuous physical therapy, but as of May 10, 2012, Plaintiff had only attended one physical therapy session. (*Id.* ¶ 88). Plaintiff further alleges that Dr. Holder "falsified" Plaintiff's medical records by reporting that there were no deformities with Plaintiff's foot, despite evidence to the contrary. (*Id.* ¶ 38). Plaintiff informed Heath of all of these issues in writing, but states that his claims were denied. (*Id.* ¶¶ 118, 125).

Plaintiff commenced this action on February 14, 2011. (Docket No. 1). On October 1, 2012, Defendants Halko, Heath, Marshall, Maw, and Williams (the "Moving Defendants") filed a motion to dismiss Plaintiff's complaint under Rule 12(b) of the Federal Rules of Civil Procedure. (Docket No. 39). By Order dated October 3, 2012, the Court instructed that Plaintiff should file any amended complaint by November 13, 2012. (Docket No. 43). On December 4, 2012, the Court received an amended complaint from Plaintiff, dated November 9, 2012, which was loaded to the docket on December 10, 2012. (Docket No. 55). By letter dated January 4, 2013, the Moving Defendants informed the Court that they wished to rely on their previously submitted motion to dismiss. (Docket No. 66). By letter dated February 4, 2013, Plaintiff informed the Court that he wished to rely on his previously submitted opposition, dated October 16, 2012. (Docket No. 71; *see also* Docket No. 51). The Moving Defendants filed their reply on March 1, 2013. (Docket No. 74).

## DISCUSSION

### A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action will not do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

Plaintiff is proceeding *pro se*.  Therefore, his submission should be held "to less stringent standards than formal pleadings drafted by lawyers."  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and alteration omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court is "obligated to construe a *pro se* complaint liberally").  Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and "'dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief.'" *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34 [4][a] at 12-72.7 (2005) (alteration omitted)).  Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'"  *Id.* (quoting 2 Moore's Federal Practice § 12.34[1][b], at 12-61 (internal quotation marks omitted)); *see also, e.g.*, *Joyner v. Greiner*, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (dismissing action because *pro se* plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

## B. Section 1983 and Deliberate Indifference

Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983; *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  Where, as here, a prisoner alleges an unconstitutional denial of medical care, his or her Section 1983 claim is predicated on an alleged violation of the Eighth Amendment, which proscribes the cruel and unusual punishment of prisoners and "imposes a duty upon prison

officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted). The first, objective prong asks (1) whether the prisoner "'was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required," and (2) "'whether the inadequacy in medical care is sufficiently serious' by examining 'how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.'" *Sledge v. Fein*, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting *Salahuddin*, 467 F.3d at 279-80). The second, subjective prong requires the plaintiff to establish that the defendant acted with "'a mental state equivalent to subjective recklessness, as the term is used in criminal law.'" *Id.* (quoting *Salahuddin*, 467 F.3d at 280). "This standard requires that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

### 1. Defendants Marshall, Heath, Maw, and Halko

Defendants argue that the claims against Superintendents Marshall and Heath, and Doctors Maw and Halko, should be dismissed because they had no personal involvement in the alleged deprivation of Plaintiff's constitutional rights. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (internal quotation

marks omitted), as there is "no *respondeat superior* liability in § 1983 cases," *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Before the Supreme Court's decision in *Iqbal*, the law in this Circuit was that a plaintiff could state a claim against a supervisory defendant in a Section 1983 case when the plaintiff alleged that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In the wake of *Iqbal*, there is some disagreement among courts about whether these five factors continue to apply. *Compare Martinez v. Perilli*, No. 09 Civ. 6470 (WHP), 2012 WL 75249, at *4 (S.D.N.Y. Jan. 5, 2012) (holding that the "five *Colon* categories still apply after *Iqbal*" and citing cases), *with Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal*'s muster"); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (expressing skepticism as to whether all *Colon* categories survived *Iqbal*, but not deciding the issue).

Although the Second Circuit has not addressed the question directly, it has indicated that at least some of the *Colon* factors other than direct participation remain viable. *See Rolon v. Ward*, 345 F. App'x 608, 611 (2d Cir. 2009) ("A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference

9

to the rights of others."); *see also Scott v. Fischer*, 616 F.3d 100, 108-09 (2d Cir. 2010).  Moreover,

it remains the case that "there is no controversy that allegations that do not satisfy any of the *Colon*

prongs are insufficient to state a claim against a defendant-supervisor."  *Aguilar v. ICE*, 811 F.

Supp. 2d 803, 815 (S.D.N.Y. 2011).

      With respect to Defendants Halko and Maw, Plaintiff merely alleges that they were

"supervising agents at Sing Sing Correctional Facility Medical Department, making them liable for

the lack of proper care that plaintiff received between the years of 2007-2008."  (*Id.* ¶ 120).  He

does not claim that Drs. Halko and Maw were either directly involved in, or even aware of, his

claims, such that they could now be liable for failing to take appropriate corrective action.  Nor does

Plaintiff allege that they helped create a policy or custom that sanctioned the allegedly deficient

medical care.  The "bare fact that [a defendant] occupies a high position in the New York prison

hierarchy," however, does not suffice to state a claim.  *Colon*, 58 F.3d at 874; *see also Back v.

Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) ("An individual

cannot be held liable for damages under Section 1983 merely because he held a high position of

authority." (internal quotation marks omitted)).  Accordingly, Plaintiff's claims against Drs. Halko

and Maw are dismissed.  *See, e.g.*, *Richardson v. Dep't of Corr.*, No. 10 Civ. 6137 (SAS), 2011 WL

710617, at *3 (S.D.N.Y. Feb. 28, 2011) (holding that conclusory allegations that a defendant

implemented prison policies is insufficient to establish personal involvement in any allegedly

unconstitutional custom or policy); *Davis v. City of N.Y.*, No. 00 Civ. 4309 (SAS), 2000 WL

1877045, at *9 (S.D.N.Y. Dec. 27, 2000) (same).

      Plaintiff next alleges that Defendants Heath and Marshall are liable because they had a duty

to "meet with medical staff to discuss medical care, treatment, etc.," on a monthly basis and "this

would also make them know that Physician's Assistants were acting in the capacity of a doctor" and

that Plaintiff's rights were otherwise being violated.  (Compl. ¶¶ 123-24).  Plaintiff makes three

additional factual allegations regarding Defendant Heath.  First, Plaintiff claims that he wrote letters

complaining of his condition to Defendant Heath, which were ultimately denied.  (*Id.* ¶ 118).

Specifically, Plaintiff alleges that he "informed Superintendent Heath of all issues" described in the

Complaint, which includes his allegations regarding Dr. Perilli, Dr. Ferdous, Nurse Furco, and Dr.

Genovese, who, by filing answers to the Complaint rather than motions to dismiss, implicitly

conceded that Plaintiff's Complaint states a claim for relief against them.  (*Id.*).  Second, Plaintiff

asked Heath about his cane, and was told "I am fully aware of your issues.  Don't worry, Mr. Curtis,

you'll get your cane."  (*Id.* ¶ 75).  Third, Plaintiff alleges that on February 25, 2011, he requested to

undergo testing to check for infection and nerve damage in his foot, but Heath "refused to have

Plaintiff undergo such testing."  (*Id.* ¶ 50).

   Although a supervisor such as Marshall "may be found liable for his deliberate indifference

to the rights of others by his failure to act on information indicating unconstitutional acts were

occurring or for his gross negligence in failing to supervise his subordinates who commit such

wrongful acts," a plaintiff must "show an affirmative causal link between the supervisor's inaction

and [his or her] injury."  *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Here, Plaintiff's claims

against Marshall do not suggest that he was personally involved in the deprivation of Plaintiff's

medical needs, as there is no factual allegation concerning Marshall's role in creating any custom or

policy at Sing Sing, nor any factual allegation that Marshall fostered an environment in which such

violations were condoned.  Although Plaintiff alleges in conclusory fashion that "after learning of

the actions of the herein mentioned Defendants that violated Plaintiff's rights, [Marshall] failed to

remedy the obvious wrongs," making him "grossly negligent in failing to adequately supervise the

subordinates who violated Plaintiff's rights" (Compl. ¶ 124), he does not allege any facts that could

explain how Marshall's "gross negligence" was the cause of his injury.  Having alleged no facts

suggesting personal involvement by Marshall or supporting allegations of his deliberate indifference

or gross negligence as the cause of Plaintiff's injury, Plaintiff's claims against Marshall are

dismissed.

Plaintiff's claims against Heath, by contrast, are just sufficient enough to survive a motion to

dismiss.  To be sure, merely receiving complaints from an inmate does not constitute personal

involvement for the purposes of Section 1983 liability.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d

Cir. 1997); *see also Smith v. Masterson*, No. 05 Civ. 2897 (RWS), 2006 WL 2883009, at *13

(S.D.N.Y. Sept. 29, 2006).  But some courts have allowed claims to proceed where a plaintiff

alleges that he brought an "ongoing" constitutional violation to the attention of a defendant who

could remedy the violation directly but failed to do so.  *See Braxton v. Nichols*, No. 08 Civ. 8568

(PGG), 2010 WL 1010001, at *9 (S.D.N.Y. Mar. 18, 2010) (citing cases).  Liberally construed, that

is what Plaintiff's Complaint does here, as it alleges that Plaintiff informed Heath of "all issues"

detailed in his Complaint, which necessarily includes that Dr. Perilli, Dr. Ferdous, Nurse Furco, and

Dr. Genovese violated his constitutional rights, but that Health "denied all of Plaintiff's request[s]

of intervention," despite being in a position to remedy the situation.  (Compl. ¶ 118).  That is

enough, although just barely so, to warrant discovery.

The Court notes, however, that Plaintiff's other factual allegations against Heath — that he

told Curtis that he would receive a cane and refused to permit the testing on Plaintiff's foot to check

for infection and nerve damage (*Id.* ¶¶ 49-50, 75) — are insufficient to state a claim for deliberate

indifference.  The former merely alleges that Heath acknowledged Plaintiff's request for a cane and

informed Plaintiff that he would receive one.  As for the latter, a medical professional's decision not

to administer a specific medical test, notwithstanding a prisoner's disagreement with that decision,

"is a classic example of the type of medical judgment that is ordinarily given judicial deference, and does not form the basis of a deliberate indifference claim." *Verley v. Goord*, No. 02 Civ. 1182 (PKC) (DF), 2004 WL 526740, at *12 (S.D.N.Y. Jan. 23, 2004); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[A] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Fulmore v. Mamis*, No. 00 Civ. 2831 (AJP), 2001 WL 417119, at *9 (S.D.N.Y. Apr. 23, 2001) (noting that the courts have repeatedly dismissed claims based on the refusal of prison doctors to order certain medical tests because such claims do not state a violation of the Eighth Amendment and collecting cases).

### 2. Defendant Williams

Finally, turning to Defendant Williams, Plaintiff alleges that in July or August of 2007, Williams failed to thoroughly examine his injured foot and continued to ignore signs of his injury in the subsequent "days, weeks and months." (Compl. ¶ 2). In his opposition brief, Curtis further states that it was inappropriate for Williams to be the primary medical provider for plaintiff's foot injury because he is not a doctor. (Opp'n 4). Defendants move to dismiss these claims on grounds that they are barred by the statute of limitations.

The statute of limitations for Section 1983 claims is equivalent to the applicable state law statute of limitations for personal injury tort claims. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York, this time period is three years. *See, e.g.*, *Shomo v. City of N.Y.*, 579 F.3d 176, 180 (2d Cir. 2009) (noting that the statute of limitations for a claim of deliberate indifference to medical needs is three years). "For statute of limitations purposes, a *pro se* prisoner's complaint is deemed filed on the date that the prisoner turn[s] his complaint over to prison officials for transmittal to the court, not when the court actually receives it." *Abbas v. Dixon*, 480 F.3d 636, 638 n.1 (2d Cir. 2007) (internal quotation marks omitted). Because Plaintiff signed his original

13

complaint on February 7, 2011, and presumably handed it over to prison authorities shortly

thereafter, his only actionable claims are those that accrued on or after February 7, 2008.

"Although state law governs the applicable limitations period, federal law governs when a

federal claim accrues." *Allen v. Mattingly*, No. 10–CV–0667 (SJF) (ARL), 2011 WL 1261103, at

*10 (E.D.N.Y. Mar. 29, 2011) (citing *Wallace*, 549 U.S. at 388; *Covington v. City of N.Y.*, 171 F.3d

117, 121 (2d Cir. 1999)).  "Under the traditional rule of accrual . . . the tort cause of action accrues,

and the statute of limitations commences to run, when the wrongful act or omission results in

damages . . . even though the full extent of the injury is not then known or predictable." *Wallace*,

549 U.S. at 391 (internal quotation marks omitted).  Likewise, "[d]elay in discovering the cause of

the injury does not prevent the claim from accruing" because it is "discovery of the injury, not

discovery of the other elements of the claim, [that] starts the [statute of limitations] clock."

*Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348-49 (S.D.N.Y. 2009) (internal quotation mark

omitted).

Here, Plaintiff's Section 1983 claims against Williams accrued in July or August 2007,

when Williams treated Plaintiff's injured foot and Plaintiff's injury first manifested itself.  (Compl.

¶ 2).  At that time, Plaintiff became aware of Williams's allegedly improper treatment, as the

Complaint alleges that Plaintiff knew of the alleged injury in the "days, weeks and months that

follow[ed]" his treatment because there were "obvious signs of injury," which is sufficient to start

the statute of limitations clock.  (*Id.*).  Although the "full extent of the injury" did not allegedly

become known until February 2008, when Plaintiff received his MRI results and "was informed of

the misdiagnosis and need for reconstructive surgery," (*id.* ¶ 3), this is legally irrelevant.  *See*

*Wallace*, 549 U.S. at 391; *see also Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) ("The

crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a

14

wrong for which damages may be recovered in a civil action.").  Because Curtis did not file his initial Complaint until February 14, 2011 — more than three and a half years after his claims accrued — and because Plaintiff does not allege that Williams participated in his treatment during the three years preceding the filing of this lawsuit, his claims against Defendant Williams are time barred and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss the Complaint (Docket No. 39) is GRANTED in part and DENIED in part.    The Complaint plausibly alleges that Defendant Heath reviewed and denied Plaintiff's grievances regarding alleged constitutional violations perpetrated by Dr. Perilli, Dr. Ferdous, Nurse Furco, and Dr. Genovese, and this claim survives the instant motion to dismiss.  Plaintiff's other claims against Defendant Heath are dismissed.  Plaintiff's claims against Defendants Williams, Dr. Maw, Dr. Halko, and Marshall are dismissed in their entirety.

The Clerk of Court is directed to terminate Defendants' Motion to Dismiss (Docket No. 39), to terminate Defendants Philip Williams, Dr. Kyeetint Maw, Dr. Mikulas Halko, and Luis R. Marshall from his action, and to mail a copy of this Opinion and Order to Plaintiff.


SO ORDERED.

Dated: May 9, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge