USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/12/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
SAMMIE CURTIS, :
:
Plaintiff, : 11-CV-1186 (JMF)
:
-v- : OPINION AND ORDER
:
PHILIP WILLIAMS et al., :
:
Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    *Pro se* Plaintiff Sammie Curtis brought this action against eleven current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing"), alleging that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. On May 9, 2013, the Court dismissed the operative complaint (specifically, the Fourth Amended Complaint (Docket No. 55), referred to herein as "Complaint" or "Compl.") with respect to four of those Defendants. (Docket No. 85). Six of the remaining seven Defendants — Dr. Jonathan Holder, Dr. Razia Ferdous, Barbara Furco, Dr. Maryann Genovese, Dr. Aman Bakshi, and Philip Heath — now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 109). For the reasons that follow, the motion is GRANTED and the Complaint is dismissed with respect to those six Defendants. Further, Plaintiff is ordered to show cause why the Complaint should not be dismissed against the last Defendant, Dr. John Perilli, who is also representing himself and did not file a summary judgment motion. (*See* Docket No. 69).

**BACKGROUND**

The facts relevant to this motion are largely uncontested. In support of their motion, Defendants filed a Statement of Undisputed Facts, along with eight supporting declarations. (Docket Nos. 111, 113-120). Pursuant to this Court's Local Rule 56.2, Defendants served Plaintiff with notice that, in opposing their motion for summary judgment, Plaintiff could not rely on the allegations in his Complaint, but was required to submit evidence countering the facts asserted by Defendants and raising specific facts to support his claims. (Docket No. 110). In response, Plaintiff did not file a statement of undisputed facts as required by Local Rule 56.1, but submitted a four-page, unsworn declaration in opposition to Defendants' motion for summary judgment, as well as six pages of black-and-white photographs, and a "statement of disputed factual issues." (Docket No. 123). Although the fact that Plaintiff's declaration is unsworn would permit the Court to disregard its allegations entirely, in light of Plaintiff's *pro se* status, the Court will consider the declaration, on the assumption that Plaintiff would submit the same declaration in proper form if given the opportunity to do so. *See, e.g.*, *Alston v. Butkiewicus*, No. 09 Civ. 207 (CSH), 2010 WL 1839939, at *1 n.1 (D. Conn. May 7, 2010); *Shah v. Kuwait Airways Corp.*, 653 F. Supp. 2d 499, 506 (S.D.N.Y. 2009).

**A. The Parties**

Plaintiff is a New York state prisoner who has been incarcerated at Fishkill Correctional Facility since being transferred there from Sing Sing on March 14, 2013. (Declaration of Counsel Supp. Defs.' Mot. Summ. J. ("Wen Decl.") (Docket No. 120), Ex. G). Defendants are all current or former employees at Sing Sing. Dr. Holder is an orthopedic surgeon who, since 1992, has been employed as an orthopedic consultant by DOCCS. (Decl. Jonathan Holder Supp. Defs.' Mot. Summ. J. ("Holder Decl.") (Docket No. 117) ¶¶ 3-4). He attends monthly clinics

where he sees inmate patients at various facilities, including Sing Sing, on a rotating basis. (*Id.* ¶ 4). Dr. Ferdous and Dr. Bakshi served as physicians at Sing Sing, where they were randomly assigned to serve as primary care providers for certain inmates. (Decl. Razia Ferdous Supp. Defs.' Mot. Summ. J. ("Ferdous Decl.") (Docket No. 119) ¶¶ 3-4; Decl. Aman Bakshi Supp. Defs.' Mot. Summ. J. ("Bakshi Decl.") (Docket No. 116) ¶¶ 3-4). Dr. Ferdous served as Plaintiff's primary care provider from 2010 through 2013. (Ferdous Decl. ¶ 9; Wen Decl., Ex. O ("Curtis Dep.") 27:18-24). In that role, she was responsible for examining Plaintiff and making any referrals for Plaintiff to receive additional treatment or be seen by outside consultants. (*Id.* ¶ 5). Those requests would be reviewed by the Facility Health Services Director (the "FHSD"), and any recommendations by an outside consultant would be reviewed by Dr. Ferdous. (*Id.* ¶¶ 5-7). Dr. Genovese served as Sing Sing's FHSD, where her principal role was to supervise the medical staff and review referral requests made by primary care providers. (Decl. Maryann Genovese Supp. Defs.' Mot. Summ. J. ("Genovese Decl.") (Docket No. 115) ¶¶ 4-5). Barbara Furco is a registered nurse, and served as the Nurse Administrator at Sing Sing, where she managed the nursing staff. (Decl. Barbara Furco Supp. Defs.' Mot. Summ. J. ("Furco Decl.") (Docket No. 114) ¶ 3). Finally, Philip Heath was the superintendent of Sing Sing from 2009 to May 2012, where, among other things, he reviewed and referred grievances appealed by inmates. (Decl. Philip Heath Supp. Defs.' Mot. Summ. J. ("Heath Decl.") (Docket No. 118) ¶¶ 2-3).

**B. Plaintiff's Medical Treatment**

In 2007, Plaintiff fractured his left foot while playing basketball at Sing Sing. (Curtis Dep. 22:25-23:7, 39:16-19). At some point before March 2010, Plaintiff was advised (precisely when and by whom is not clear from the record, but ultimately immaterial) that he should

undergo surgery, but he opted instead for a non-surgical course of treatment. (Holder Decl. ¶ 9). By March 2010, however, it became apparent that Plaintiff's foot had not properly healed, and he agreed to undergo surgery. (Wen Decl., Ex. C, D-CURTIS 558, 572; Holder Decl. ¶ 9). On June 21, 2010, Dr. Holder performed mid-foot fusion surgery on Plaintiff's left foot, attempting to fuse Plaintiff's navicular bones, which had collapsed due to a lack of blood supply. (Holder Decl. ¶¶ 10, 12).

Following the surgery, Plaintiff complained of pain and swelling in his left foot. (Holder Decl. ¶ 13). Dr. Holder recommended follow-up X-rays, and the X-rays revealed that screws he had inserted into Plaintiff's foot during the surgery had broken. (*Id.*; Declaration in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n") (Docket No. 123) ¶ 13). Dr. Holder then performed a second, corrective surgery on March 1, 2011, to replace the broken screws and insert brackets to hold the screws in place. (Holder Decl. ¶ 14; Pl.'s Opp'n ¶ 15). Following that second surgery, Plaintiff complained that he was losing sensation and range of motion in his left foot, and Dr. Holder recommended that additional X-rays be taken. (Holder Decl. ¶ 15). Those X-rays revealed that, incredibly, the hardware inserted into Plaintiff's foot had broken for a second time. (*Id.* ¶ 16; Holder Decl., Ex. C, at D-CURTIS 312; Pl.'s Opp'n ¶¶ 18-19). Dr. Holder reported to Plaintiff that he was going to file a report with the manufacturer and stop using their products. (Holder Decl. ¶ 16). Dr. Holder then performed a third surgery on Plaintiff on August 16, 2011 to replace the broken screws and bracket, and recommended three days of bed rest and for Plaintiff to wear a post-operation shoe on his left foot for six weeks. (Holder Decl. ¶ 18; Pl.'s Opp'n ¶ 20; Holder Decl., Ex. A).

Following the third surgery, X-rays confirmed that the surgical hardware remained intact. (Defs.' Statement Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 Statement") (Docket No. 111)

4

¶ 69; Wen Decl., Ex K, at D-CURTIS 254, 253, 252, 251, 250, 248).  In addition, Dr. Holder recommended certain post-surgical treatment for Plaintiff, including that he use one crutch as a cane and that he be evaluated by the podiatry consultant for arch supports to alleviate foot pain. (Holder Decl. ¶ 22).  Following Dr. Holder's recommendations, Dr. Ferdous referred Plaintiff to the prescription footwear consultant, who evaluated Plaintiff for custom-molded orthotics and recommended orthopedic boots.  (Wen Decl., Ex. J, at D-CURTIS 278).  After a number of fitting sessions, Plaintiff received the boots and orthotics.  (Wen Decl., Ex. I; *see also* Curtis Dep. 9:2-11).

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact.  *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322.  In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

When a summary judgment motion is brought against a *pro se* litigant, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly."). That special solicitude is not unlimited, however, and it does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Specifically, a *pro se* Plaintiff opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07 Civ. 7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

### B. Section 1983 and Deliberate Indifference

Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Significantly, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted), and supervisory liability therefore "cannot rest on *respondeat superior*," *Friedman v. N.Y.C. Admin. for Children's Servs.*, 502 Fed. App'x 23, 27

(2d Cir. 2012); *see also Seymore v. Dep't of Corr. Servs.*, No. 11 Civ. 2254 (JGK), 2014 WL 641428, at *6 (S.D.N.Y. Feb. 18, 2014) ("[T]here is no *respondeat superior* liability in § 1983 cases." (internal quotation marks omitted)). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Where, as here, a prisoner alleges an unconstitutional denial of medical care, his Section 1983 claim is predicated on an alleged violation of the Eighth Amendment, which proscribes the cruel and unusual punishment of prisoners and "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "[t]he plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (internal quotation marks and alterations omitted). The first, objective prong asks (1) whether the prisoner "'was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required," and (2) "'whether the inadequacy in medical care is sufficiently serious' by examining 'how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.'" *Sledge v. Fein*, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting *Salahuddin*, 467 F.3d at 279-80). The second, subjective prong requires the plaintiff to establish that the defendant acted with "'a mental state equivalent to subjective recklessness, as the term is used in criminal law.'" *Id.* (quoting *Salahuddin*, 467 F.3d at 280). "The standard requires that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

In light of those principles, "[a] showing of medical malpractice is . . . insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

1.      **Dr. Holder**

Turning first to Dr. Holder, Plaintiff's claim fails because he has not submitted any evidence suggesting that Dr. Holder acted in "conscious disregard of a substantial risk of serious harm." *Hernandez*, 341 F.3d at 144. The fact that the hardware Dr. Holder inserted into Plaintiff's foot broke, requiring two additional surgeries, is certainly disturbing, but there is no evidence that Dr. Holder himself was at fault. Nowhere does the record indicate that Dr. Holder was aware, or should have been aware, of a problem with the hardware, and he testified that he "did not know before the June 2010 or March 2011 surgeries that the brackets . . . were defective." (Holder Decl. ¶ 17). At one point in his declaration, Plaintiff asserts that the second surgery was a result of Dr. Holder's use of the "wrong 'sized hardware'" (Pl.'s Opp'n ¶ 15), but that statement is contradicted by other statements in Plaintiff's own declaration and other evidence in the record. (*See id*. ¶¶ 13-14; *see also* Furco Decl. ¶ 11). Moreover, the assertion is

"in the nature of medical malpractice, rather than deliberate indifference." *Tindal v. Goord*, 340 Fed. App'x 12, 13 (2d Cir. 2009) (summary order) (citing *Hernandez*, 341 F.3d at 149). Likewise, the Court's view is not altered by Plaintiff's assertion that the first surgery was a result of "misdiagnosis" (Pl.'s Opp'n ¶ 8), as Plaintiff submits no evidence regarding what the initial diagnosis was and "negligen[ce] in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Accordingly, the Eighth Amendment claim against Dr. Holder is dismissed.

### 2. Dr. Ferdous

There is no evidence in the record suggesting that Dr. Ferdous violated Plaintiff's Eighth Amendment rights either. Dr. Ferdous served as Plaintiff's primary care provider from sometime in the middle of 2010 until March 14, 2013, when he was transferred to Fishkill. (Curtis Dep. 27:18-24). She saw Plaintiff on a fairly regular basis, including several times when Plaintiff complained to her of pain and swelling after his surgeries. (Ferdous Decl. ¶¶ 9, 12-13). Among other things, Dr. Ferdous ordered X-rays and an MRI, advised Plaintiff to take pain medication and keep his left leg elevated, and, on one occasion, fixed Plaintiff's unraveling cast. (*Id.* ¶¶ 16, 18-19; *see also id.*, Ex. B). There is no evidence that, as Plaintiff alleges in the Complaint, Dr. Ferdous "failed to adhere to Defendant Holder's orders" with respect to the cast and X-rays (Compl. ¶¶ 12-13), that she denied Plaintiff a pass that would have granted him access to a medical bus (*id.* ¶ 16), or that she refused to change the grips on Plaintiff's crutches (*id.* ¶¶ 18-21). Accordingly, the claim against Dr. Ferdous is dismissed.

### 3. Barbara Furco

Similarly, there is no evidence that Nurse Furco violated Plaintiff's Eighth Amendment rights. In his deposition, Plaintiff testified in conclusory fashion that Nurse Furco prevented him

9

from receiving a "post-op shoe" and a wooden cane. (Curtis Dep. 35:13-36:1). The record, however, shows that Plaintiff did, in fact, receive a post-operative shoe on January 20, 2011, after it had been requested by Dr. Genovese and ordered by Nurse Furco. (Curtis Dep. 36:1-9; Furco Decl. ¶ 9; *see also id.*, Ex. A). As for the cane, Nurse Furco did deny Plaintiff's request, but that was because the type of cane Plaintiff requested was metal and therefore not permitted by prison regulations. (Furco Decl. ¶ 15; *see also*, Ex. D). Plaintiff was directed to use one crutch instead of a cane, a directive with which he complied. (Furco Decl. ¶ 15; *see also*, Ex. D). Further, both of these allegations are insufficiently serious to satisfy the objective component of the deliberate indifference test. *See, e.g.*, *Wandell v. Koenigsmann*, No. 99 Civ. 8652 (WHP), 2000 WL 1036030, at *4 (S.D.N.Y. July 27, 2000) (collecting cases for the proposition that "[w]hether an injured prisoner should be provided crutches is a medical judgment as to the appropriate course of treatment, and disagreement with that decision is not actionable under the Eighth Amendment"); *Veloz v. New York*, 35 F. Supp. 2d 305, 307, 312 (S.D.N.Y. 1999) (dismissing as insufficiently serious allegations that doctor did not prescribe plaintiff a wheelchair, crutches, or cane after a foot operation). Accordingly, the claim against Nurse Furco is dismissed.

   4. **Dr. Genovese**

Next, Plaintiff's claim against Dr. Genovese fails because she was not personally involved in any alleged constitutional deprivation. Dr. Genovese served as the FHSD at Sing Sing from June 2009 to September 2012, after which she was transferred to another facility. (Genovese Decl. ¶ 4; Curtis Dep. 49:11-16). Plaintiff testified that Dr. Genovese did not treat his foot, and that the only medical care she provided him was prescribing painkillers. (Curtis Dep. 52:10-13, 53:16-18). Plaintiff described one instance when Dr. Genovese did not respond to him

when he approached her in a hallway (*id.*, 50:19-21), but that incident falls far short of the standards required to meet the objective component of a deliberate indifference claim. In addition, to the extent that Plaintiff's claim against Dr. Genovese relies on her supervision of other employees on the medical staff, there is no evidence that Dr. Genovese was "grossly negligent in supervising subordinates who committed . . . wrongful acts." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[1] Accordingly, Plaintiff's claim against Dr. Genovese is dismissed.

### 5.     Dr. Bakshi

The claim against Dr. Bakshi fails for similar reasons. Plaintiff alleges in the Complaint that Dr. Bakshi was, at one point, Plaintiff's assigned care provider, and was "suppose[d] to follow-up with the care that Defendant Williams was administering" (Compl. ¶ 121), but there is no evidence in the record to support that allegation. To the contrary, the evidence shows that Dr. Bakshi was never Plaintiff's primary care provider and that physician assistants, such as Defendant Williams (against whom Plaintiff's claims were previously dismissed), only reported to the FHSD, not to Dr. Bakshi. (Bakshi Decl. ¶¶ 3, 7-9, 11). In short, there is no evidence that Dr. Bakshi was personally involved in the alleged constitutional violations in this case.

### 6.     Philip Heath

The final moving Defendant is Heath, who served as Sing Sing's superintendent from 2009 to May 2012, in which capacity he reviewed and referred grievances appealed by inmates. (Heath Decl. ¶¶ 1-3). In in its previous Opinion in this case, the Court addressed and narrowed Plaintiff's claims against Heath. The Court held that Plaintiff's allegations that Heath told

---

[1] The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). Whether it did or not, however, Plaintiff has failed to adduce evidence demonstrating Dr. Genovese's personal involvement even under *Colon*.

11

Plaintiff that he would receive a cane and refused to permit testing on Plaintiff's foot failed to state claims for deliberate indifference. *See Curtis v. Williams*, No. 11 Civ. 1186 (JMF), 2013 WL 1915447, at *7 (S.D.N.Y. May 9, 2013). Plaintiff's other claims against Heath, however, were "just sufficient" to survive the motion to dismiss. *Id.* Specifically, Plaintiff alleged that "Dr. Perilli, Dr. Ferdous, Nurse Furco, and Dr. Genovese violated [Plaintiff's] constitutional rights, but . . . Hea[]th 'denied all of Plaintiff's request[s] of intervention,' despite being in a position to remedy the situation." *Id.* The Court declined to dismiss this claim because some courts had "allowed claims to proceed where a plaintiff alleges that he brought an 'ongoing' constitutional violation to the attention of a defendant who could remedy the violation directly but failed to do so." *Id.* (citing *Braxton v. Nichols*, No. 08 Civ. 8568 (PGG), 2010 WL 1010001, at *9 (S.D.N.Y. Mar. 18, 2010)).

At this stage, however, Plaintiff's remaining claims against Heath must be dismissed. Whether or not Heath's denials of Plaintiff's requests for intervention constituted personal involvement, *see Braxton*, 2010 WL 1010001, at *9, and whether or not Heath was in a position to remedy any constitutional violations, there is no evidence that Dr. Perilli, Dr. Ferdous, Nurse Furco, or Dr. Genovese violated Plaintiff's rights. The Court has already addressed, and dismissed, the allegations against Defendants Ferdous, Furco, and Genovese. As discussed below, the only evidence in the record regarding Dr. Perilli's conduct comes from Plaintiff's deposition, in which he testified that Dr. Perilli was never his primary care provider and that he was seeking to hold Dr. Perilli responsible for his "inactions" and for allowing an "unhealthy environment" to exist in the prison. (Curtis Dep. 24:25-25:13). Plaintiff has therefore failed to show that he "brought an ongoing constitutional violation to [Heath's] attention," *Curtis*, 2013 WL 1915447, at *7, and the claims against Heath are dismissed.

### 7. Dr. Perilli

Although Dr. Perilli is representing himself in this action and did not move for summary judgment, the Court concludes by briefly addressing Plaintiff's claims against him.  As just noted, Plaintiff admitted in his deposition that Dr. Perilli was never his primary care provider at Sing Sing.  (Curtis Dep. 24:25-25:2).  In addition, when prompted, Plaintiff failed to identify any specific action taken by Dr. Perilli that could serve as the basis for a deliberate indifference claim.  (*Id.* 25:3-13).  In light of that record, the Court would be on firm ground dismissing the Complaint against Dr. Perilli for lack of personal involvement.  Out of an abundance of caution, however, and because Dr. Perilli has not moved for summary judgment, the Court will not dismiss Plaintiff's claim against Dr. Perilli at this point.  Instead, Plaintiff is hereby ORDERED to show cause, in writing, within **thirty days** of the date of this Opinion, why the Complaint should not be dismissed as against Dr. Perilli, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  To avoid summary judgment, Plaintiff may not rely solely upon the allegations in the Complaint.  Instead, Plaintiff must submit evidence, such as witness statements or documents, raising material issues of fact for trial.  Any witness statements must be in the form of affidavits.  Plaintiff may submit his own affidavit and/or the affidavits of others.

If Plaintiff fails to file anything within thirty days, the Complaint will be dismissed in its entirety without further notice.  If Plaintiff attempts to show cause, Dr. Perilli shall file any response to Plaintiff's submission within **thirty days** of its filing.  As Dr. Perilli is proceeding *pro se*, Plaintiff is reminded that he must mail a copy of any submission directly to Dr. Perilli at

his address indicated on the Docket and submit proof such service to the Court (via the *Pro Se* Office).[2]  Dr. Perilli is reminded that he must do the same with respect to Plaintiff.

## CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED, and the Complaint is dismissed with respect to Dr. Holder, Dr. Bakshi, Dr. Ferdous, Dr. Genovese, Nurse Furco, and Heath.  Further, Plaintiff is ordered to show cause in writing why summary judgment should not be granted as to the last Defendant, Dr. Perilli, as well.

The Clerk of Court is directed to (1) terminate all Defendants other than Dr. Perilli; (2) mail a copy of this Opinion and Order to *both* Plaintiff and Dr. Perilli; and (3) terminate Docket No. 109.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Date: June 12, 2014
      New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[2]  As indicated on the Docket as of the date of this Opinion, Dr. Perilli's address is 2 Osage Drive East, Ossining, NY, 10562.